## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Ray M. Fite, Jr.

v.

Gertrude C. Winkelman and
Aetna Casualty & Surety Co.

January 13, 1984

Case No. (Law) 8485-FB

By JUDGE FRED W. BATEMAN

On December 15, 1981, the plaintiff Fite (hereafter referred to as Fite), while permissively operating his employer's vehicle (insured by defendant The Aetna Casualty and Surety Company, hereafter referred to as Aetna, with uninsured motorist limits of 50/100/25), was involved and injured in an auto accident with the defendant Gertrude C. Winkelman (hereafter referred to as Winkelman), who was insured by Lumbermans Insurance Company (hereafter referred to as Lumbermans, with minimum statutory limits of 25/50). Upon Lumbermans tendering the $25,000. statutory limit of its policy to Fite, a dispute has arisen between Fite and Aetna concerning the limits of Aetna's policy as the same may be applicable to Fite. Aetna concedes the limits of its uninsured motorist endorsement are 50/100/25, but contends that by virtue of Lumbermans tender of its limits of $25,000., Aetna's total possible exposure to Fite is $25,000. by reason of the reduction provision of Section E2 of its uninsured motorist endorsement. Fite contends that Aetna's total possible exposure to him is $50,000. and seeks a determination of the dispute by way of declaratory judgment.

Virginia Code Section 8.01-184 et seq deals with declaratory judgments. This section is sufficiently broad to cover the coverage issue raised by Fite. Furthermore, *Rodgers v. Danko*, 204 Va. 140, 143 (1963), held that that issue (coverage afforded by the policy) may be decided

in an action ex contractu brought on the policy by the interest judgment plaintiff or in a declaratory judgment proceeding to determine the rights of the parties.

The significant provisions of Aetna's uninsured motorist endorsement that are in dispute are:

> Paragraph 4B - Uninsured motor vehicle means a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an accident provide at least the amounts required by the Virginia Motor Vehicle Safety Responsibility Act, but their limits are less than the limits of this insurance.

> Paragraph B1 - We (Aetna) will pay in accordance with the Virginia Uninsured Motorist Insurance Law all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle.

> Paragraph B2 - If this insurance provides a limit in excess of the amounts required by the Virginia Motor Vehicle Safety Responsibility Act, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.

> Paragraph E2 - Any amount payable under this insurance shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under the policy's liability insurance.

Factually it is undisputed that at the time of the accident in question the minimum limit for each person required by the Virginia Financial Responsibility Act was $25,000. and Winkelman's policy complied therewith; that paragraph 4B of Aetna's uninsured motorist endorsement (commonly known as an underinsured provision) was not required by the Virginia uninsured motorist statute at the time the policy was issued. It is obvious that Aetna's insurance provides the limit in excess of the amount then required by the Virginia Motor Vehicle Safety Responsibility Act and it is undisputed that Lumbermans has tendered the limits of its policy to the plaintiff, hence there is no issue as to priority of coverage.

The remaining issue to be resolved is whether or not Aetna's maximum potential liability to Fite is $25,000. or $50,000. and this appears to be an issue of first impression in Virginia.

In the present case, of course, it is not known what the amount of the judgment, if any, would be in favor of Fite. Consequently, this opinion will deal with the maximum potential liability that Aetna would owe to Fite under the facts in this case.

Prior to January 1, 1983, Section 38.1-381 did not mandate the inclusion of under insured coverage in liability insurance policies. Consequently, Aetna was not required to include such a provision in its uninsured motorist endorsement. Accordingly, it would follow that Aetna could provide such coverage under such terms and conditions as it desired, and one would only have to look to that provision in the endorsement to ascertain the coverage and conditions. Counsel for Fite argues that since Aetna chose to define the under insured coverage in paragraph 4 of its endorsement entitled "Uninsured Motor Vehicle," and the further fact that in paragraph B1 Aetna asserted that it would pay in accordance with the Virginia Uninsured Motorist Insurance Law all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle, it could not thereafter limit its obligation by virtue of paragraph E2, supra.

Virginia Code Section 38.1-381(b) prohibits the issuance of any automobile liability insurance policy in this state "unless it contains an endorsement or provision undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle within limits which shall be no less than the requirement of Section 46.1-1(8)" (in this case $25,000). Paragraph 4(a) of Aetna's endorsement complies with Virginia's Uninsured Motorist Law. Paragraph 4(b), *supra*, provides for under insurance coverage on which there is no statutory mandate. Paragraphs 4(a) and 4(b) are mutually exclusive. Therefore, Aetna may pay under paragraph 4(a) in accord with Virginia Uninsured Motorist Insurance Law, but this does not mean that such condition is applicable to paragraph 4(b).

Under paragraph 4(b), *supra*, Aetna may pay under such terms as it may prescribe in clear and unambiguous language. This conclusion is not inconsistent with deci-

96

sions of our Supreme Court in a number of cases dealing with "stacking" of uninsured motorist coverage, one of which is *Goodville Mutual Casualty Company v. Joanne Borror*, 221 Va. 967 (1981), cited by Aetna in support of its position. The specific issue in *Goodville* was whether an insurer, by terms of its policy, could prevent stacking. The Supreme Court held that the Virginia rule permitted stacking unless the policy, by clear and unambiguous language, prevents such multiple coverage. It further held that the restrictive language contained in Goodville's policy was clear and unambiguous.

While the *Goodville* case deals with "stacking," the law enunciated by the Court appears to be applicable to this case. The language of paragraph E2 of Aetna's policy is clear and unambiguous.

The Court is of the opinion that dependent on the amount of the judgment, if any, that favors Fite against Winkelman, Aetna's maximum potential liability to Fite is $50,000., less the minimum statutory coverage of $25,000. which has been tendered and presumably would be made by Lumbermans.